## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PAMELA RICARD**, | |
| *Plaintiff*, | |
| *v.* | |
| **USD 475 GEARY COUNTY SCHOOLS SCHOOL BOARD MEMBERS**—Ron Johnson, Kristy Haden, Anwar Khoury, Jim Schmidt—in their official and individual capacities; Beth Hudson, Mark Hatcher, Jason Butler—in their official capacities; **REGINALD EGGLESTON**, Superintendent, USD 475 Geary County Schools, in his official and individual capacities; and **KATHLEEN BRENNAN**, Principal, Fort Riley Middle School, in her official capacity, | Case No: **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Pamela Ricard, by and through counsel, and for her Verified Complaint against Defendants, hereby states as follows:

### INTRODUCTION AND GENERAL FACTUAL ALLEGATIONS

1. Pamela Ricard ("Ms. Ricard") has had an exemplary, decades-long teaching career in K-12 public schools and has taught in the USD 475 Geary County School District ("District") since 2005. Ms. Ricard currently teaches math at Fort Riley Middle School in Fort Riley, Kansas.

2. In the spring semester of 2021, middle school administrators began issuing "diversity and equity" training and emails to middle school teachers, including Ms. Ricard, directing teachers to use students' "preferred names" in lieu of a student's name as listed in the District's enrollment records or legal name.

3. In April 2021, Defendants suspended Ms. Ricard for three-days and issued a formal written reprimand for addressing a biologically female student by the student's legal and enrolled last name.

1

4. Prior to addressing the student by the student's last name, Ricard had been informed by email by the school counselor the student preferred to be called by an alternate first name different from the student's legal and enrolled first name.

5. Although the school counselor, when notifying Ms. Ricard of the student's new preferred first name in his email to Ricard, had referred to the student as "she" (consistent with the student's biological sex), Ms. Ricard was later told by the student's classmate that the student's preferred pronouns were "he/him."

6. At no point has the student in question directly asked Ms. Ricard to call the student by an alternate preferred first name, last name, or pronouns different from the information contained in the student's enrollment records.

7. Neither the District nor the school had a formal policy regarding student preferred name and pronoun use at the time Ms. Ricard was suspended and reprimanded.  Instead, Ms. Ricard was suspended and reprimanded under generic school district policies related to Bullying by Staff; Diversity and Inclusion; and Staff-Student Relations prohibiting "harassment" and "bullying" of students by staff.

8. A week after Ms. Ricard returned from her suspension, the middle school principal sent the teaching staff training documents on Diversity Training on Gender Identity and Gender Expression as well as a protocol document regarding the Use of Preferred Names and Pronouns. The new training materials and protocol mandated that teachers use students' preferred names and pronouns when requested and that failure to do so would constitute a discriminatory act subject to employee discipline. The materials stated in part:

> Society has historically utilized "he/him" when identifying biological males and "she/her" when identifying biological females. If it is a group of individuals "they/them" is traditionally used. Individuals prefer to utilize pronouns that they identify with. This does not have to agree with their biological assignment. The use

of "they/them" is a gender-neutral use of pronouns.

Employees should be aware and make an effort to utilize the pronouns an individual requests to be identified by. This will assist in the prevention of discrimination and harassment. This appropriate usage of pronouns also contributes to a culture of unity and inclusivity. . . .

Discrimination due to gender identify [sic] or genetic information is in violation of Civil Rights Act of 1964 also known as Title VII. Discrimination can be obvious, example, refusing to hire someone because of their gender identity. Other discrimination may not be so obvious. Example, refusing to call someone by their preferred name or pronoun.

9. The "Use of Preferred Names and Pronouns" guidance document sent on April 21, 2021 and apparently backdated to April 14, 2021 states in part:

When a student shares with a staff member that the student wants to go by a preferred name and pronouns, the staff member will:

- Share the student's request with the building administrator(s) and grade level or school counselor.

The building administration or counselor will speak with the student to confirm the request and provide awareness of the request. The building administration or counselor will advise the student that their preferred name and pronouns will be utilized by staff in the building. *The building administration will explain to the student that every effort will be made to remember their preferred name and pronouns; however, patience and understanding will be required.*

*The building administration will contact the parents/guardians of the student to Inform* [sic] *them that the school will honor the request of the student.*

The building administration or counselor will then notify the student's teachers of the preferred name and pronouns. The building administration will notify any additional staff that may have contact with the student (instructional coaches, nurse, front office staff, support staff.)

 (emphasis added).

10. Ms. Ricard appealed her previous discipline to the superintendent and the Board of Education of Geary County Schools USD 475 ("Board") pursuant to the District's grievance procedure. On July 8, 2021, and at two other times during the appeal and mediation process, Ms.

Ricard requested a religious accommodation "regarding any school policy that requires a teacher or school employee to actively state or otherwise use a student's or any other person's preferred pronouns or other gendered language when different from the student's or person's biological sex."

11. Ms. Ricard is a Christian and holds sincere religious beliefs consistent with the traditional Christian and biblical understanding of the human person and biological sex. Ms. Ricard believes that God created human beings as either male or female, that this sex is fixed in each person from the moment of conception, and that it cannot be changed, regardless of an individual person's feelings, desires, or preferences. Any policy that requires Ms. Ricard to refer to a student by a gendered, non-binary, or plural pronoun (*e.g.*, he/him, she/her, they/them, zhe/zher, etc.) or salutation (Mr., Miss, Ms.) or other gendered language that is different from the student's biological sex actively violates Ms. Ricard's religious beliefs.

12. On August 4, 2021, Ms. Ricard participated in a closed Board hearing regarding her employee discipline. In the hearing, Ms. Ricard explained that her decision to use "Miss [Student 1 Legal/Enrolled Last Name"] instead of using the student's new preferred first name was intended to be respectful to the student without compromising Ms. Ricard's own conscience and religious beliefs. Ms. Ricard also explained that this approach was consistent with her past practice over the course of her career of using a student's formal salutation and last name when the circumstances required.

13. During the Board hearing, Ms. Ricard proposed a specific accommodation and policy that would allow her to continue to address students by their names but refrain from using preferred pronouns or other gender-specific language for a student when such pronouns or language were different than the student's biological sex.

14. At the conclusion of the hearing, the Board removed all persons from the meeting room

4

in order for the Board to deliberate.

15. Before inviting Ms. Ricard and her legal counsel back into the room, the Board invited Mark Edwards, appearing at the hearing as legal counsel for an adverse party including Defendant Eggleston and school administration, into the closed deliberations to engage in *ex parte* communications for several minutes.

16. The Board eventually went out of executive session and reconvened the public meeting, inviting Ms. Ricard and her legal counsel as well as other members of the public back into the meeting. Once the meeting was resumed, the Board immediately adjourned the meeting apparently without taking any public binding action.

17. On August 13, 2021, District staff sent parties a letter "deny[ing] the requested remedy sought by the grievant."

18. After the Kansas Attorney General's Office informed the Board that the decision denying Ms. Ricard's appeal had violated the Kansas Open Meetings Act because the Board had not conducted a public vote, the Board rescheduled the matter for public consideration at its September 7, 2021 board meeting.

19. On September 7, 2021, the Board voted to unanimously in open session to deny Ms. Ricard's disciplinary appeal, thus affirming the suspension and written reprimand.

20. At the same meeting, the Board voted unanimously to summarily deny Ms. Ricard's request for a religious accommodation.

21. At no point prior to or after the Board's action summarily denying Ms. Ricard's religious accommodation request did the Board or any District representative attempt to discuss a potential accommodation or neutral policy with Ms. Ricard or her representative.

22. At the same meeting, the Board adopted a new district-wide policy expressly

mandating the use of students' preferred names and pronouns.

23. In October 2021, the District administration sent notice to Ms. Ricard and other teachers that pursuant to this new district-wide policy:

> Students will be called by their preferred name and pronoun. *This means if a student makes a request of a staff member to call them by a name other than their legal name as noted in the student information system- Skyward, the staff member(s) will respect the student's wishes and refer to them with the indicated preferred name. USD 475 will not communicate this information to parents unless the student requests the administration or counselor to do so*, per Federal FERPA Guidance.

(emphasis added).

24. Since the District's initial imposition of employee discipline against Ms. Ricard in April 2021, the District has adopted several versions of evolving, and at times contradictory, policies and informal directives expressly related to preferred name and pronoun use.

25. During the 2021-2022 school year, Defendants and District staff have since become aware of other instances in the District and at Fort Riley Middle School wherein teachers or staff have failed or forgotten to use a student's preferred pronouns, yet no disciplinary action under the generic board policies or the new preferred name and pronoun policy has been taken against such teachers.

26. The District and the Defendants now threaten to punish Ms. Ricard again if she continues to refrain from using a student's preferred pronouns, express her views through silence or neutral language, or even engage in a neutral policy of referring to students by their enrolled last names or with other gender-neutral language. Under District policies, all teachers must now refer to each student—both in and out of class—using whatever names or pronouns the student claims reflect his or her particular gender identity on any given day.

27. The District now demands this of Ms. Ricard even though the concept of gender identity is entirely subjective and fluid, even though the number of potential gender identities is

infinite (with ever expanding options currently available), and even though the number of potential pronouns has likewise exponentially multiplied in recent years—all for the purpose of lending credence to cultural ideas Ms. Ricard does not share or wish to advance that are contrary to her core religious beliefs.

28. Defendants have retaliated against Ms. Ricard for exercising her First Amendment rights, including her right not be compelled to engage in particular speech or expression, have violated her First Amendment rights to free speech and free exercise of religion, have violated the unconstitutional conditions doctrine, have deprived her of due process and equal protection of law, and have breached their contract with her. Thus, this action concerns the denial of Ms. Ricard's fundamental and clearly established rights under the Free Speech and Free Exercise Clauses of the First Amendment, the unconstitutional conditions doctrine, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## JURISDICTION & VENUE

29. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

30. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

31. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

32. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. § 1367.

33. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and all of the acts described in this Verified Complaint occurred in this district.

## PLAINTIFF

34. Pamela Ricard is a resident of Kansas and a teacher in the District.

## DEFENDANTS

35. Defendants Ron Johnson, Kristy Haden, Anwar Khoury, Jim Schmidt, Beth Hudson, Mark Hatcher, Jason Butler (hereinafter "Board Defendants") are members of the Board of Education of USD 475 Geary County Schools, which constitutes the governing body of the District.  Through its members the Board of Education is responsible for, among other things, the adoption and authorization of policies that govern teacher conduct and expression in the District, including the policies challenged herein.

36. Board Defendants Ron Johnson, Kristy Haden, and Jim Schmidt previously voted to uphold and impose employee discipline against Plaintiff for facts state herein, after being provided with notice of the unconstitutional nature of the discipline and the policies at issue as enforced.

37. Board Defendants Ron Johnson, Kristy Haden, Jim Schmidt, and Anwar Khoury previously voted to deny Ricard's request for a religious accommodation to the Board policies and District informal directives at issue, after being provided with notice of the unconstitutional nature of the policies and their enforcement.

38. As members of the School Board, the Board Defendants exercise final policymaking authority for policies that govern the District, including the policies governing faculty members.

39. The Board Defendants are responsible for the enactment, amendment, and repeal of District policies, including those challenged herein.

40. As elected members of the School Board, the Board Defendants possess the authority

to change and enforce the policies challenged herein.

41. The Board Defendants have not modified the policies governing teachers challenged herein to comply with constitutional mandates.

42. Each of the Board Defendants acquiesces in, sanctions, approves, and supports the actions of the other Defendants in enforcing the policies and procedures governing faculty members, including the policies challenged herein, against Ms. Ricard.

43. None of the Board Defendants have instructed District personnel, including the other Defendants, to change or alter the policies and practices challenged herein to comply with constitutional mandates or to change the way those policies are applied to faculty members, including Ms. Ricard.

44. Board Defendants are aware of the retaliatory and unconstitutional actions authorized by and occurring under the challenged policies and have not instructed District personnel, including the other Defendants, to change or alter either the policies or the actions taken pursuant to those policies to comply with constitutional mandates.

45. Defendant Reginald Eggleston is the Superintendent of the District, and served in that role at all times relevant to this Complaint

46. As Superintendent, Defendant Eggleston is the chief executive, educational, and administrative officer of the District.

47. Defendant Eggleston's authority and powers include oversight and control of the District.

48. Defendant Eggleston's duties include, among others, authorizing, executing, enforcing, and implementing the policies governing faculty members in the District and overseeing the operation and management of the District.

49. As Superintendent, Defendant Eggleston directly oversees Defendant Brennan.

50. As Superintendent, Defendant Eggleston has the responsibility implementing final policymaking authority concerning faculty members in the District.

51. As Superintendent, Defendant Eggleston possesses the authority and responsibility for governing, overseeing, and disciplining faculty members in the District.

52. As Superintendent, Defendant Eggleston is and was aware of the retaliatory and unconstitutional actions authorized by and occurring under the challenged policies and has not instructed District personnel, including the other Defendants, to change or alter either the policies or the actions taken pursuant to those policies to comply with constitutional mandates.

53. As Superintendent, Defendant Eggleston has the authority to review, approve, or reject the decisions of other District officials, including the other Defendants, regarding the policies challenged herein.

54. Defendant Eggleston has authorized, approved, and implemented the policies that are challenged herein and that are being used to restrict Ms. Ricard's protected expression.

55. Defendant Eggleston has confirmed, sanctioned, approved, and ratified District officials' application of the policies challenged herein to Ms. Ricard in a discriminatory and retaliatory fashion.

56. Defendant Eggleston materially participated in the August 4, 2021 school board in which he asked the Board to uphold the employee discipline he had previously imposed against Ms. Ricard.

57. Defendant Kathleen Brennan is the Principal of Fort Riley Middle School, having started that position in Fall 2021.

58. Defendant Brennan possesses the authority and responsibility for governing and

regulating faculty at Fort Riley Middle School.

59. Defendant Brennan's duties include overseeing the various departments at Fort Riley Middle School, including the middle school math department.

60. Defendant Brennan's duties include supervising Ms. Ricard.

61. Defendant Brennan was the Assistant Principal at Fort Riley Middle School during the 2020-2021 school year and was Ms. Ricard's supervisor at the time the District imposed employee discipline against Ms. Ricard.

62. Defendant Brennan materially participated in the August 4, 2021 school board hearing on behalf of Defendant Eggleston, the previous school principal, and the school administration at which school administration asked the Board to uphold employee discipline against Ms. Ricard.

63. Defendants Eggleston and Brennan each possesses the authority to enforce the District policies challenged herein and to recommend changes to them.

64. In executing their respective responsibilities, Defendant Eggleston independently and in consultation with other Defendants, enforced the policies challenged herein against Ms. Ricard.

65. Defendants Eggleston and Brennan each have the authority under the policies challenged herein to investigate, recommend disciplinary actions, and impose disciplinary actions on faculty in the District.

66. Defendants Eggleston and Brennan, independently and in consultation with each other, are responsible for enforcing the policies challenged herein and applying them to Ms. Ricard.

67. Defendants Eggleston and Brennan have failed to recommend any changes to the policies challenged herein or to how those policies are enforced to comply with constitutional mandates.

68. Defendant Eggleston has failed to stop District officials, including the other

Defendants, from applying the policies challenged herein to faculty, including Ms. Ricard.

69. Each and every Defendant is sued in his or her official capacity. Defendants Ron Johnson, Kristy Haden, Anwar Khoury, Jim Schmidt, and Reginald Eggleston are sued in their individual capacities as well.

**SPECIFIC FACTUAL ALLEGATIONS**

**<u>Plaintiff's Religious Beliefs</u>**

70. Ms. Ricard believes based on scientific evidence, that children do not have a fully developed capacity to understand the long-term consequences of their decisions.

71. Ms. Ricard wants to protect children from making potentially irreversible and life-changing decisions that they may later regret. Ms. Ricard believes that, because of the difficulty of assessing matters of gender identity and the long-term irreversible consequences of certain treatments for transgender-identifying people, including puberty blockers, hormone replacement therapy, and sex-reassignment surgery, children should not be encouraged to undertake social or medical transition because of their inability to assess long-term consequences.

72. Ms. Ricard believes that parents must help children understand the many and complex factors surrounding gender identity.

73. Ms. Ricard believes that educators can assist parents in this effort.

74. Ms. Ricard believes that parents have a fundamental right to control the upbringing and education of their children.

75. Ms. Ricard believes that any gender-identity education policy must account for this fundamental right.

76. Ms. Ricard believes that any gender-identity education policy that does not account for parents' fundamental right to control the upbringing and education of their children is deceptive

and disserves both children and their parents.

77. Ms. Ricard believes educators have free speech and religious freedoms that may be impacted by gender-identity education policy.

78. Ms. Ricard believes that all education policy must protect educators' fundamental freedoms.

79. Ms. Ricard believes, based on scientific evidence, that there are only two anatomical sex presentations (except in very rare scientifically demonstrable medical circumstances), which are male and female.

80. Ms. Ricard also believes, based on scientific evidence, that scientifically demonstrable and anatomically-correct designations of sex should control access to shared public-school restrooms and locker rooms for minors.

81. For those students who are not comfortable using facilities associated with their anatomical sex, Ms. Ricard supports those students having access to and using a private restroom or locker space.

82. To accommodate the interests of students, parents, and teachers, Ms. Ricard believes that teachers and student peers can—but should not be required to—call a student, who has obtained parental permission, by a derivative of his or her legal name.

83. To accommodate the interests of students, parents, and teachers, Ms. Ricard believes that teachers and student peers can—but should not be required to—refer to a student, who has obtained parental permission, by pronouns that do not correspond to the student's biological sex.

84. Ms. Ricard is a professing Christian who strives to live out her faith daily.

85. Because of her Christian faith, Ms. Ricard has sincerely held religious beliefs that govern her views about human nature, marriage, gender, sexuality, morality, politics, and social

issues.

86. Ms. Ricard's Christian faith informs her convictions concerning human nature, the purpose and meaning of life, and ethical and moral standards that should govern human conduct.

87. Ms. Ricard's faith teaches her that God immutably creates each person as male or female; these two distinct, complementary sexes reflect the image of God; and rejection of one's biological sex is a rejection of the image of God within that person.

88. Ms. Ricard also believes she cannot affirm as true those ideas and concepts that she believes are not true. Doing so, she believes, would violate biblical commands against dishonesty and lying.

89. Ms. Ricard believes that referring to a child using pronouns inconsistent with the child's biological sex is harmful to the child because it is untrue.

90. Ms. Ricard also endeavors to treat every person with dignity, love, and care, because she believes all people are created in the image of God.

91. Ms. Ricard objects to Defendants' regulation, suppression, and censorship of her sincerely held religious beliefs.

**Plaintiff Disciplined for Using Student's Legal/Enrolled Last Name Instead Student's Apparent Preferred Alternative First Name**

92. All exhibits are true and accurate copies of correspondence or documentation regarding the facts at issue in this case and are incorporated herein.

93. Generic pseudonyms (ex. "Student 1," "Student 2," and "Student 3") have been used for individual minor children in this Complaint to preserve child privacy and anonymity.

94. Ms. Ricard is a middle school teacher in the District and has been employed as a teacher in the district since 2005.

95. During the 2020-2021 school year, as part of her teaching duties at Fort Riley Middle

School (FRMS), Ms. Ricard taught the sixth, seventh, and eighth grade Math Strategies class.

96. Student 1 and Student 2 were students in Ms. Ricard's Math Strategies class during the 2020-2021 year.

97. Student 1 and Student 2 are both biological females, and at all times relevant to this, Complaint have been enrolled in the District's Skyward enrollment record system under each student's respective legal first and last names and biological sex.

98. During the week of March 8, 2021, Ms. Ricard and Student 2 had a conversation and discussed Student 2's plans for Spring Break.

99. During the conversation, Student 2 told Ms. Ricard that she hoped her father would buy new jeans for her during Spring Break since the only pair of jeans she owned were getting ripped up.

100. On March 12, 2021, Ms. Ricard approached fellow teacher Paige Miller ("Miller") after school to ask if "[Student 2 Legal First Name]" was still at the school because Ms. Ricard had sought to give Student 2 an extra pair of jeans and some extra shirts after Spring Break.

101. During this conversation with Ms. Ricard, Miller repeatedly asked Ms. Ricard if Ms. Ricard meant "[Student 2 Preferred Alternative First Name]."

102. Ms. Ricard continued to state to Miller she was looking for "[Student 2 Legal First Name]."

103. Miller eventually told Ms. Ricard that "[Student 2 Legal First Name]" now "goes by" "[Student 2 Preferred Alternative First Name]."

104. Ms. Ricard stated, "don't go there" and then moved on from the conversation to look for Student 2.

105. On March 31, 2021, Principal Shannon Molt ("Molt") sent an email to all FRMS

teachers stating: "When we have a student that requests to go by a preferred name that is different than their given name, our district honors the request. Once you are aware of a preferred name, use that name for the student." A copy of the March 31, 2021 Shannon Molt email is attached as **EXHIBIT A**.

106. As of April 7, 2021, no official district or school policy existed regarding use of student's preferred names or preferred pronouns when different from student's enrolled name or biological sex, nor did any policy provide a definition of "preferred names or pronouns" or in what manner teachers or staff would be provided with official notice of a change in a student's preferred name or pronouns.

107. On April 7, 2021, School Counselor Jason Lubbers ("Lubbers") sent an email to Ms. Ricard stating that "[Student 1 Enrolled First Name]" asked him to tell Ms. Ricard that "she would like to be called [Student 1 Preferred Alternative First Name]." A redacted copy of the April 7, 2021 Lubbers email attached as **EXHIBIT B** (hereinafter referred to as "April 7 Lubbers email").

108. The April 7 Lubbers email did not specify anything about Student 1's last name or that Ms. Ricard was prohibited from using Student 1's last name due to Student 1's preferred alternative first name.

109. The April 7 Lubbers email did not indicate that Student 1 preferred to be called _only_ by her preferred first name and not her last name.

110. As of April 7, 2021, Student 1 was enrolled in the Skyward district enrollment record's system as "[Student 1 Legal/Enrolled First and Last Name]" with a gender/sex listed as "female."

111. After receiving the April 7 Lubbers email, Ms. Ricard sent a text to Assistant Principal Terry Heina ("Heina") to ask for advice on how to address Student 1 as a result of the email when Student 1's enrolled name had not been changed in the Skyward system.

112. Throughout her teaching career, including in her Math Strategies class, Ms. Ricard has regularly used students' last names instead of first names as a more formal way of addressing students or getting students' attention, as circumstances may require.

113. Ms. Ricard determined after contacting Heina that the best and most neutral course of action would be to address Student 1 by her last name.

114. Shortly thereafter, during the 5th and 6th class period Math Strategies class from 12:50 to 1:30p on the same day, Ms. Ricard addressed Student 1 as "Miss [Student 1 Legal/Enrolled Last Name]" when Ms. Ricard needed to get Student 1's attention at the end of class.

115. Directly after class, at 1:33pm, Ms. Ricard received an email from Student 2 stating:

> I don't know if Mr. lubbers has emailed you about [Student 1's Alternative First Name]'s ([Student 1 Legal First Name]) preferred name and pronouns and im assuming since you said "miss [Student 1 Legal Last Name]" to him in class he has yet to do so, unless he has and youre purposely misgendering/deadnaming him on purpose, which I don't think you would do that purposely but there's always a possibility. Anyways, His preferred name is [Student 1 Preferred Alternative First Name] and his pronouns are He/Him.

116. At no point has Student 1 directly asked Ms. Ricard to call Student 1 by an alternate preferred first name, last name, or pronouns different from the information contained in Student 1's enrollment records in the Skyward system.

117. The next day, on April 8, 2021, during her Math Strategies class period, Ms. Ricard addressed Student 1 as "[Student 1 Legal Last Name]" at one point during the class when Ms. Ricard needed to get Student 1's attention.

118. During the same class period, Ms. Ricard issued a Level 2 student discipline form to Student 2 for emailing with friends during class when Student 2 was supposed to be working on math assignments.

119. Ms. Ricard issued the Level 2 student discipline form after providing an initial

warning earlier in the class period to Student 2 regarding Student 2's unauthorized email use in class.

120. After receiving the student discipline form and being asked by Ms. Ricard to fill out the portion for the required student's response, Student 2 began making several alterations to the form, including altering the student name and other words in the document, before ultimately throwing the form in the trash.

121. Ms. Ricard informed Student 2 that the student was to wait in the classroom until a hall monitor could escort the student to the office.

122. Student 2 then walked to Ms. Ricard's desk and left a note on Ms. Ricard's desk before exiting the room without permission.

123. The note Student 2 left on Ms. Ricard's desk read:

"[Student 1 Last Name]"'s name is [Student 1 Preferred Alternative First Name] btw, his pronouns are He/Him & if you cant act like an Adult [sic] & respect him & his pronouns then prepare yourself to deal with his mother since you cant be a decent human being and respect him. All youre doing right now is showing that youre [sic] transphobic & don't care that youre [sic] being visibly transphobic. – [Student 2 Preferred Alternative First Name] [Student 2 Legal Last Name] (my pronouns are he/they btw)

[sic]

124. After receiving the note, Ms. Ricard emailed Molt, Heina, and Defendant Brennan to bring the note and student disciplinary action to the administrators' attention and to request a conversation about how to address the student's accusation.

125. Then-Principal Shannon Molt responded to Ms. Ricard's email by stating, "Yes I will handle this situation. I would like to speak with you and [Student 2 Preferred Alternative First Name] privately prior to visiting together as a group."

126. After school on April 8, 2021, Lubbers forwarded the April 7 Lubbers email to

Principal Shannon Molt.

127. On April 9, 2021, Ms. Ricard replied to Molt's email response by stating: "I would like to have the conversation today if at all possible. It is really bothering me and I don't want to have to worry about it over the weekend!"

128. On April 9, 2021, at 10:30am, Molt called Ms. Ricard and told her to meet her in the conference room with Dawn Toomey, then-District HR Officer ("Toomey"), and told Ms. Ricard that she could bring a personal representative with her to the meeting.

129. At Ms. Ricard's request, Catherine Coughlin accompanied Ms. Ricard to the meeting with Molt and Toomey as Ms. Ricard's Junction City Educators Association ("JCEA") representative in the event Ms. Ricard was being subjected to employee discipline.

130. At the meeting, Ms. Ricard and Toomey discussed the circumstances surrounding the April 7 and 8 classroom incidents with Student 2, including Ms. Ricard's use of Student 1's legal last name.

131. Ms. Ricard told Toomey and Molt that she "didn't think we should be calling students different names without parental consent" but that she would follow the administration's directives against her personal beliefs.

132. After the meeting, Toomey emailed Ms. Ricard a Notice of Suspension of Teacher placing Ms. Ricard on 3-day suspension with pay until the investigation was completed.  The April 9, 2021 Notice of Suspension of Teacher email is attached as **EXHIBIT C** (hereinafter referred to as "Notice of Suspension").

133. The Notice of Suspension stated that "this suspension is in connection to violations of [eleven distinct] board policies," including:

Board Policy GAAA – Equal Opportunity Non-Discrimination

Board Policy GAAB – Complaints of Discrimination

Board Policy GAACA – Diversity and Inclusion

Board Policy GAAE – Bullying by Staff

Board Policy GAE – Complaints

Board Policy GAF – Staff-Student Relations

Board Policy GBU – Ethics

Board Policy JCCD – Bullying

Board Policy JCE – Complaints

Board Policy JGECB – Student Diversity and Inclusion

Title VII – Civil Rights Act of 1694 [sic]

134. On April 15, 2021, when Ms. Ricard returned from her 3-day suspension, at a meeting that included District and JCEA representatives, Molt gave Ms. Ricard copy of a formal Written Reprimand dated April 15, 2021 that stated that Ms. Ricard had violated three (3) board policies, including:

Board Policy GAACB-Diversity and Inclusion
All employees, students and the Board of Education of Geary County USO 475 have a responsibility to treat others with dignity and respect. All employees, students and the Board of Education are expected to exhibit conduct that reflects dignity, respect and inclusion at all times during the instructional day and at all other district-sponsored programs and events.

The student preferred name was not used by Ms. Ricard.

Board Policy GAAE- Bullying by Staff
Section 1. K.S.A. 2007 Supp. 72-8256 is hereby amended to read as follows: 72-8256. (a) As used in this section: (1) "Bullying" means: (A) Any intentional gesture or any intentional written, verbal, electronic or physical act or threat that is sufficiently severe, persistent or pervasive that creates an intimidating, threatening or abusive educational environment for a student or staff member that a reasonable person, under the circumstances, knows or should know will have the effect of: i. Harming a student or staff member, whether physically or mentally; ii. Damaging a student's or staff member's property: iii. Placing a student or staff member in

20

reasonable fear of harm to the student or staff member; or iv. Placing a student or staff member in reasonable fear of damage to the student's or staff member's property;

Students felt discriminated against based on the teacher not using the preferred names.

Board Policy GAF-Staff-Student Relations
Staff members shall maintain professional relationships with students which are conducive to an effective educational environment. Staff members shall not submit students to bullying, harassment, or discrimination prohibited by board policy. Staff members shall not have any interaction of an inappropriate and/or sexual nature with any student at any time regardless of the student's age or consent.

[Student 1] was not called by his preferred name after Ms. Ricard received notification emails from a student and the counselor.

The April 15 Written Reprimand is attached as **EXHIBIT D** ((hereinafter "April 15 Written Reprimand").

135. The board policies quoted in the April 15 Written Reprimand, including GAACB-Diversity and Inclusion, GAAE-Bullying by Staff, and GAF-Staff-Student Relations, are hereinafter collectively referred to as "Generic Board Policies."

136. The April 15 Written Reprimand also contained future performance expectations for Ms. Ricard, including: (a) "Preferred names and pronouns will be utilized;" and (b) "A standard operating procedure for notification of preferred names and pronouns will be share [sic] with staff by the district."

137. Ms. Ricard signed and initialed the April 15 Written Reprimand but handwrote on the reprimand "I do not agree with this!"

**Plaintiff Unsuccessfully Appeals Discipline Decision to Superintendent**

138. On April 20, 2021, Ms. Ricard sent a written rebuttal to the April 15 Written Reprimand to Assistant Superintendent Lacee Sell.

139. On April 21, 2021, Molt sent an email (attached as **EXHIBIT E**) to all Fort Riley

Middle School staff attaching two documents, including: 1) USD475 Diversity Training on Gender Identity and Gender Expression, dated April 7, 2021 (attached as **EXHIBIT F**); and 2) Use of Preferred Names and Pronouns, dated April 14, 2021 (attached as **EXHIBIT G**). (Exhibits F and G hereinafter are together referred to as "April 2021 Training Materials.")

140. Despite the April 2021 Training Materials being dated or backdated to April 14, 2021 and April 7, 2021 respectively, Ms. Ricard does not know the date the April 2021 Training Materials were created or if they were distributed to any teachers before April 21, 2021.

141. On April 28, 2021, Ms. Ricard filed a Level 1 & 2 Grievance under the 2020-2021 Negotiated Agreement between the District and JCEA challenging the April 15 Written Reprimand. The Negotiated Agreement is attached as **EXHIBIT H** (hereinafter "Negotiated Agreement").

142. On May 3, 2021, Ms. Ricard met with Defendant Brennan (then Assistant Principal), Dana Wiegand (President of the JCEA), and Molt to discuss Ms. Ricard's Level 1 and Level 2 Grievance.

143. After the meeting, Molt sent an email to Ms. Ricard denying the Level 1 and Level 2 Grievance and keeping the April 15 Written Reprimand in place.

144. On May 12, 2021, Ms. Ricard filed a Level 3 Grievance seeking superintendent review of the discipline decision pursuant to the Negotiated Agreement.

145. Art. X, § A-C of the Negotiated Agreement states in relevant part:

A.  It is agreed informal disciplinary actions are the first steps taken in constructive discipline and are to be taken by administrators in situations of a minor nature involving the teacher's conduct or job performance. Disciplinary actions will be administered in a fair and equitable manner, and, where practical, in a private manner with an appropriate substantive investigation of the key individuals involved.

B.  The information regarding proposed and implemented discipline of teachers

shall be considered confidential, privileged information, only to be released to administrators who work with the teacher, the superintendent, and, if appropriate, to the Board of Education. The teacher may release information regarding the discipline to any appropriate party.

C.  Discipline of a teacher will be progressive and/or sequential, and appropriate to the severity of the infraction, except in those situations that constitute a breach of board policy that could impair the effective operation of the school, or a potential criminal violation.

146. On May 19, 2021, Ms. Ricard received a Level 3 Grievance response from Defendant Eggleston dated the same date. Defendant Eggleston's May 19, 2021 Level 3 Grievance Response attached as **EXHIBIT I** (hereinafter "May 19 Level 3 Response").

147. In his May 19 Level 3 Response, Defendant Eggleston states, in part:

Due to the nature of the board policies in violation, the incident was not of a minor nature. This district has an obligation as educators to ensure that our students are provided with a safe and secure environment. When someone engages in conduct that is deemed to be in a discriminatory nature, action must be taken and cannot be limited to a counseling or an oral reprimand. The counseling in this incident had already occurred when the building leadership provided the email notification to staff on March 31, 2021 and through the Trooper Newsletter on April 4, 2021.

148. The "counseling" events regarding Ms. Ricard's employee discipline that Eggleston in his response alleged to have occurred were in the days *before* the incidents that led to the employee discipline.

149. On May 21, 2021, Dana Wiegand emailed Defendant Eggleston a request for mediation on Ms. Ricard's behalf pursuant to Level 4 of the grievance process under the Negotiated Agreement.

**Plaintiff Expressly Requests Religious Accommodation to Preferred Pronoun Policy**

150. On July 8, 2021, before the commencement of mediation, legal counsel for Ms. Ricard emailed Eggleston a letter requesting "a religious accommodation regarding any school policy that requires a teacher or school employee to actively state or otherwise use a student's or any other

person's preferred pronouns or other gendered language when different from the student's or person's biological sex." A copy of the July 8, 2021 Letter is attached as **EXHIBIT J**.

151. The letter stated in part:

Ms. Ricard is a Christian and holds sincere religious beliefs consistent with the traditional Christian and biblical understanding of the human person and biological sex. Ms. Ricard believes that God created human beings as either male or female, that this sex is fixed in each person from the moment of conception, and that it cannot be changed, regardless of an individual person's feelings, desires, or preferences. Any policy that requires Ms. Ricard to refer to a student by a gendered, non-binary, or plural pronoun (e.g. he/him, she/her, they/them, zhe/zher, etc.) or salutation (Mr., Miss, Ms.) or other gendered language that is different from the student's biological sex actively violates Ms. Ricard's religious beliefs.

Ms. Ricard's basis for a religious accommodation is grounded in her constitutional and statutory rights under the First Amendment of the United States Constitution, Title VII of the federal Civil Rights Act of 1964, Section 7 of the Kansas Bill of Rights, the Kansas Acts Against Discrimination (K.S.A. 44-1001 et seq.), the Kansas Preservation of Religious Freedom Act (K.S.A. 60-5302 et seq.), and other applicable federal and state laws and regulations.

The school's suspension and disciplinary action against Ms. Ricard was based on an ad hoc and still-evolving gender preference school directive for which very little training, notice, or even consistent application was provided. No option for informal counseling or even clarification regarding the manner in which religious, philosophical, educational, or other objections to the policy could be raised by teachers or other employees was provided to Ms. Ricard prior to the school taking disciplinary action.

152. The letter also included several requests that Eggleston resolve the constitutional issues raised by the District's enforcement of the General Board Policies, including that he:

- remove from Ms. Ricard's permanent employee file all documents and references to the three-day suspension and other adverse employee disciplinary actions imposed by the school against Ms. Ricard regarding the April 2021 student gender preference issue;

- request that the elected school board review any current, ongoing, permanent, or proposed gender identity and gender expression policy(ies) ("Gender Expression Policy"), with public input, during upcoming open meeting(s);

- request that as part of the board's review, the board incorporate within any Gender Expression Policy a process for reasonable accommodations to be made

for employees with religious, philosophical, pedagogical, or other objections to the mandated use of gendered language inconsistent with a person's biological sex;

- provide opportunity for Ms. Ricard and other school employees to provide input regarding any Gender Expression Policy prior to adoption by the school board;

- due to the now widespread public knowledge of Ms. Ricard's suspension and the long-term immutable damage to her reputation, issue an apology letter to Ms. Ricard acknowledging the rescission of all employee disciplinary action regarding this matter.

153. That same day, the parties engaged in mediation with the Federal Mediation and Conciliation Service but were unable to achieve a resolution.

**Plaintiff Appeals Discipline and Requests Religious Accommodation to School Board**

154. On July 14, 2021, legal counsel for Ms. Ricard emailed Defendant Eggleston a request for hearing appealing his decision upholding the discipline to the District School Board pursuant to Level 4 of the grievance process under the Negotiated Agreement.

155. On August 2, 2021, legal counsel for the District emailed legal counsel for Ms. Ricard a packet of information that was submitted to the Board in defense of the Defendant Eggleston's decision to uphold the discipline imposed on Ms. Ricard.

156. On August 4, 2021, legal counsel for Ms. Ricard emailed legal counsel for the District and the clerk of the Board a letter with accompanying documentation in support of Ms. Ricard's request that the Board rescind Defendant Eggleston's decision with respect to the discipline imposed on Ms. Ricard (hereinafter "Ricard Packet").   A copy of the letter, without the accompanying documentation, is attached hereto as **EXHIBIT K**.

157. In addition to other points, the Ricard Packet noted the arbitrary nature of the April 2021 Training Materials and the practical implications for teachers in attempting to follow such a vague and unpredictable procedure while being subject to the whims and machinations of their

students' daily preferences.

158. Such practical implications, as stated in the Ricard Packet include:

-loss of teacher classroom control;

-potential for parental consent issues regarding minor child's preferred names and genders;

-increased potential possibility of student and teacher harassment of colleagues seeking to "set up" a disliked teacher for a violation;

-the potential for bad faith ad hoc changes in student names (e.g. daily name changes, obscene names, new names without parental consent);

-the potential for student-to-student bullying by deceitfully "informing" a teacher of another student's "new" preferred name or gender.

159. The Ricard Packet further stated:

This is not an academic exercise. Mrs. Ricard is aware of situations in her school during the 2020-2021 school year wherein a student changed his name several times without any formal enrollment update. More to the point, the student at issue in this matter, [Student 1] was issued a Level 1 discipline in September 2020 for logging into a classroom zoom under the name "Cumsock."

In addition, the limitless number of preferred gendered pronouns and salutations being incorporated into everyday parlance creates a potentially uncontrolled school environment. Examples of the variety of "preferred pronouns" available to students are attached [exhibits omitted] for reference. If the district is going to acknowledge a student's gendered language preferences without limitation, the district must provide a formal re-enrollment process that provides teachers with notice[.]

160. Based on the April 2021 Training Materials, students may select any gender identity they choose because the selection is based entirely on an individual student's subjective feelings.

161. Without any limitation, the April 2021 Training Materials indicate that there are an infinite variety of gender identities based on the use of any "preferred name and pronoun."

162. The April 2021 Training Materials establish a procedure making gender identity completely subjective, allowing students can choose their gender identity without any substantiating evidence but by the student merely "shar[ing] with a staff member that the student

wants to go by a preferred name and pronouns."

163. Some sources say that there are currently 112 different options for one's gender identity, including genders that "refuse[] to be categorized," that are "influenced by your surroundings," are "affected by mood swings," that "change[] depending on which friend you're with," and those that "outright refus[e] to accept or identify in, on, or around the gender spectrum."[1]

164. These sources say "this list is non-exhaustive" because one should "[f]eel free to mix and match your own prefixes and suffixes to create the orientation that best describes you."[2]

165. Other sources note that the number of possible gender identities is infinite.[3]

166. Based on the April 2021 Training Materials procedure, gender-expansive or transgender students could demand that staff, including Ms. Ricard, and all students refer to them by any pronoun they choose, from the standard English pronouns (e.g., "he" or "she"), to the standard pronouns applied in a nonstandard way (e.g., "they" used to refer to one person), to those invented within the last few years (e.g., "ze," "zie," "sie," "hir," "hirs," "zie," "xe," "xem," "xyr," "xyrs," "per," "ve," "ver," "vis," "fae," "faer," "ae," "aer," "e," "ey," "em," "eir," "eirs," "tey," "ter," "tem," "ters"),[4] to any others a student idiosyncratically requests.

167. According to some sources, the number of possible pronouns is infinite because "[a]ny combination is possible." [5]

---

[1]    *See, e.g., Dude Asks: How Many Genders Are There In 2021?, available at* https://dudeasks.com/how-many-genders-are-there-in-2021/ (last visited March 1, 2022).
[2]    *Id.*
[3]    *See, e.g.*, Marco A. Hildalgo, Diane Ehrensaft, *et al.*, *The Gender Affirmative Model: What We Know and What We Aim to Learn*, 56 HUM. DEV. 285, 288 (2013) (advocating for "self-acceptance within an infinite variety of authentic gender selves").
[4]    *See, e.g.*, Univ. of Wis., Milwaukee, Lesbian, Gay, Bisexual, Transgender Res. Ctr., *Gender Pronouns*, *available at* https://uwm.edu/lgbtrc/support/gender-pronouns/ (last visited Aug. 5, 2021).
[5]    *See, e.g.*, Univ. of Cal., Davis, LGBTQIA Res. Ctr., *Pronouns*, *available at* https://lgbtqia.ucdavis.edu/educated/pronouns (last visited March 1, 2022).

27

168. Because of these practical implications, included within the Ms. Ricard Packet was a draft of a neutrally applicable policy and procedure document which Ms. Ricard proposed the Board adopt to accommodate her religious beliefs and free speech rights. (hereinafter "Ricard Proposed Neutral Policy," attached as **EXHIBIT L**).

169. The specific language of the Ricard Proposed Neutral Policy stated:

> Employees may refer to a student by only their first and/or last name and refrain from using a student's preferred gendered pronouns or salutations. For purposes of this section, the teacher shall refer to a student only by preferred first and/or last name(s) as listed in the official enrollment records of the district and maintained in the Skyward system.

170. At the August 4, 2021 board hearing, legal counsel for Ms. Ricard discussed the Ricard Proposed Neutral Policy and requested the school board adopt the policy.

171. After receiving presentations from respective legal counsel on behalf of Ms. Ricard and Defendant Eggleston, and taking statements from Ms. Ricard, another teacher, Defendant Eggleston, and Defendant Brennan, the School Board went into executive session with just the Board members present to discuss the matter.

172. After initial deliberations, the Board later invited Mark Edwards, who had appeared at the hearing as legal counsel and advocate for an adverse party including Defendant Eggleston and other school administrators, into their closed deliberations in order to engage in *ex parte* communications with the Board while the other party, Ms. Ricard and her legal counsel, were excluded from the meeting.

173. Art. IV, § C.5 of the Negotiated Agreement states in part:

> An appeal hearing before the Board of Education will be in executive session between the individual teacher or teachers and the Board of Education. The Board of Education shall consider the teacher's complaint, the written decision of the principal or immediate supervisor and the Superintendent and any relevant evidence or oral arguments that either party desires to present, as well as the advisory process that was implemented through FMCS. *The parties will then be*

*excused, including the Superintendent when the Board considers the matter, unless all of the parties are recalled to elicit additional information.* The grievant, however, may not present any allegation or complaint that was not presented in the preceding steps. Neither party shall withhold information, which is pertinent to the grievance. Proposed motions for Board action shall not be submitted to the Board by the administration unless they are submitted in the alternative.

(emphasis added).

174. After coming out of executive session, the Board adjourned the meeting with no public action.

### **Plaintiff Repeatedly Renews Request for Religious Accommodation**

175. On August 12, 2021, legal counsel for Ms. Ricard emailed District legal counsel and Defendant Eggleston requesting an update on the Board decision and renewing Ms. Ricard's religious accommodation request pending since July 8, 2021. A copy of the August 12, 2021 email is attached as **EXHIBIT M**.

176. On August 13, 2021, District staff sent parties a letter "deny[ing] the requested remedy sought by the grievant" (hereinafter, "Board Decision Letter," attached as **EXHIBIT N**).

177. The Board Decision Letter was dated August 11, 2021 and signed by Defendant Jim Schmidt, then-Vice President of the Board.

178. After receiving a copy of the letter, JCEA representatives submitted a Kansas Open Meetings Act complaint to the Office of the Attorney General of Kansas, alleging that the Board had improperly taken binding action to approve the decision communicated in the Board Decision Letter during executive session.

179. After review, the Office of the Attorney General of Kansas issued a preliminary violation letter to the Board informing it of the violation and instructing the Board to consider and vote on the matter in open meeting at its next scheduled meeting (attached as **EXHIBIT O**).

180. On August 19, 2021, Defendant Brennan emailed Ms. Ricard stating: "As of today I

have not received your signed sheet of paper stating you read the students guidebook, staff guidebook and diversity training. This was due on August 11th. Please get this done and the paper to Amy ASAP."

181. On August 20, 2021, legal counsel for Ms. Ricard again emailed District legal counsel, Defendant Eggleston, and Defendant Brennan reminding them of Ms. Ricard's religious accommodation request pending since July 8, 2021 and previously renewed in writing on both August 4, 2021 and August 12, 2021.

182. On August 21, 2021, District legal counsel informed Ms. Ricard legal counsel that "[t]he administration and the School Board is planning to address your client's accommodation request at the September 7, 2021 meeting. We will notify you following the meeting of the outcome of your client's request."

## After KOMA Violation, Board Takes Official Action Denying Plaintiff's Appeal of Discipline, Denying Religious Accommodation, and Adopting New District-Wide Preferred Pronoun Policy

183. On September 7, 2021, at the regularly scheduled Board meeting, the Board voted 4-0 to uphold the discipline decision against Ms. Ricard.

184. At the same meeting, the Board voted unanimously to deny Ms. Ricard's request for a religious accommodation to any school policies requiring teachers to use a student's preferred gendered pronouns when different from those of the student's biological sex.

185. At no point prior to or after the Board's action summarily denying Ms. Ricard's accommodation request did the Board or any District representative attempt to discuss a potential accommodation or neutral policy with Ms. Ricard or her representative.

186. At the same meeting, the Board adopted amendments to Board policies GAACB-Diversity and Inclusion and JGECB-Student Diversity and Inclusion, adding to each, respectively:

Employees will be called by their preferred name and pronouns.

Students will be called by their preferred name and pronouns.

187. At the meeting, the Board also adopted an amended version of the GAF—Staff-Student Relations policy, and the Board reissued an unamended version of the GAAE—Bullying by Staff policy as part of its annual policy review.

### 2021-2022 School Year: Inconsistent Treatment of Teachers, "Equity" Training, and Change of Policy Regarding Parental Notification of Preferred Names or Pronouns

188. On October 8, 2021, Defendant Brennan sent an email to all USD 475 Parents and Guardians from Defendant Eggleston notifying them of the new Diversity and Inclusion policies, as well as the school district's intended practice to not inform parents of a student's preferred name or pronoun request unless the student asks the District to share the information with the student's parents.

189. The October 8, 2021 email from Defendant Eggleston reads in part:

On September 7, 2021, the USD 475 Board of Education adopted an addition to the district Diversity and Inclusion Policy. USD 475 is committed to creating an educational environment that embraces diversity, equity, empathy, and inclusion for all students. This policy includes, "Respectful communication, inclusion, and cooperation between and among all students and staff". The addition to this policy is the statement: Students will be called by their preferred name and pronoun. This means if a student makes a request of a staff member to call them by a name other than their legal name as noted in the student information system- Skyward, the staff member(s) will respect the student's wishes and refer to them with the indicated preferred name. USD 475 will not communicate this information to parents unless the student requests the administration or counselor to do so, per Federal FERPA Guidance.

(October 8, 2021 email from Defendant Eggleston, as forward by Defendant Brennan, attached as **EXHIBIT P**).

190. On October 27, 2021, Ms. Ricard was directed by Defendant Brennan, now Principal of Fort Riley Middle School, to complete training on District's 2021 policies, including its new

Diversity and Inclusion policies.

191. On October 28, 2021, Ms. Ricard completed the training after District personnel confirmed that "an acknowledgement directly from Ms. Ricard that she has completed the training and acknowledge[ing] her duty as an employee to comply with all school employee policies" would constitute successful completion of the training in lieu of acknowledging that Ms. Ricard "ha[d] reviewed and accepted the terms of Equity Policy."

192. On January 28, 2022, Ms. Ricard received an email from Counselor Lubbers sent to several teachers regarding a student's request to be addressed by preferred pronouns of "they/them." The email stated:

> [Student 3 Preferred Alternative First Name] stated that staff does not always call them by preferred pronoun. . . . I told them they all might not be aware or just need to be reminded which is the purpose of this statement.

(redacted January 28, 2022 Lubbers email attached as **EXHIBIT P**).

193. As of March 3, 2022, Ms. Ricard has at least two students in her classes with stated preferred pronouns different than each respective student's biological sex.

194. District policies GAACB (Diversity and Inclusion), GAAE (Bullying by Staff), GAF (Staff-Student Relations), and JGECB (Student Diversity and Inclusion), as well as the continuously evolving training materials and formal and informal email directives interpreting those policies, currently apply to Ms. Ricard as a teacher in the District. (GAACB, GAAE, GAF, and JGECB policies attached as **EXHIBIT R**; previous versions of such policies, the *April 21 Training Materials* (EXHIBITS F and G), other aforementioned training materials, and aforementioned formal and informal email directives, including Exhibit A and E, are collectively referred hereinafter as "District Policies").

195. Ms. Ricard faces the imminent possibility of subsequent disciplinary action, up to and

including termination, should she violate the District Policies by seeking, consistent with her conscience and religious beliefs, to avoid the use of preferred pronouns of students or employees that are different from the student's or employee's biological sex.

## STATEMENTS OF LAW

196. At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to Defendants who acted under color of a statute, regulation, or custom of the State of Kansas (*i.e.*, under color of state law and authority).

197. Defendants knew or should have known that they were violating Ms. Ricard's constitutional and contractual rights by:

a.   Subjecting Ms. Ricard to disciplinary action because she spoke in a way that communicated her beliefs regarding gender identity;

b.   Disciplining Ms. Ricard by placing a written reprimand in her personnel file that implicitly threatens further disciplinary action if she engages in similar conduct in the future;

c.   Compelling Ms. Ricard to speak in a way that affirms and recognizes as true the idea that a person can change his or her gender or identify differently than his or her sex;

d.   Prohibiting Ms. Ricard from living and speaking in a way that is consistent with her religious beliefs and punishing her when she tried to do so;

e.   Refusing to grant Ms. Ricard a religious accommodation;

f.   Disciplining Ms. Ricard in violation of the Negotiated Agreement;

g.   Allowing other staff to, whether intentionally or accidentally, address certain students by the student's legal name or biological sex pronoun, or refrain from addressing certain students preferred name or pronoun, without imposing employee discipline on such

33

staff in the same manner Ms. Ricard was disciplined.

198. The policies and practices that have led to the violation of Ms. Ricard's constitutional and contractual rights remain in full force and effect.

199. Ms. Ricard is suffering irreparable harm from Defendants' continued policies and the way those policies have been enforced.

200. Ms. Ricard has no adequate or speedy remedy at law to correct the deprivation of her rights by Defendants.

201. Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest, and are not narrowly tailored to serve any such interests.

202. Defendants' policies and related practices are not narrowly tailored as applied to Ms. Ricard because Ms. Ricard's expression does not implicate any of the legitimate interests Defendants might have.

203. Using a pronoun when referring to a student expresses a message about that student's sex.

204. How to respond to individuals with gender dysphoria, or individuals who identify as transgender, is a matter of national and local public debate and concern, including whether it is appropriate to treat males as if they are females and vice versa in matters of personal privacy, pronouns, K-12 classroom environments, parental notice and consent, and athletic competitions.

205. Compelling Ms. Ricard to express that a female is a male by using male pronouns, or vice versa, forces her to express a message on that matter of public concern and debate.

206. If students heard Ms. Ricard use a male pronoun to refer to a female student, or vice versa, they would reasonably understand that Ms. Ricard was endorsing the idea that a person can change their sex, or that it is appropriate to refer to a female as a male, or vice versa.

207. The use or non-use of a pronoun does not interfere with the efficient functioning of a school.

208. The use or non-use of a pronoun does not constitute prohibited discrimination or harassment because it does not objectively and substantially impair access to education.

209. Using a person's preferred name rather than a pronoun to refer to them does not create a hostile learning environment.

210. Using a person's preferred name rather than a pronoun to refer to the person is not discriminatory.

211. Defendants do not have a compelling interest in mandating that Plaintiff use a male pronoun to refer to a female student or vice versa.

212. Ms. Ricard's speech on matters of public concern, including her use or non-use of pronouns, have not prevented, and will not prevent, Defendants from efficiently providing services to the public (or even threaten to do so).

213. Unless the policies and conduct of Defendants are enjoined, Ms. Ricard will continue to suffer irreparable injury.

214. Under 42 U.S.C. §§ 1983 and 1988, Ms. Ricard is entitled to appropriate relief invalidating Defendants' challenged policies and related conduct.

## FIRST CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Freedom of Speech

### Retaliation

### (42 U.S.C. § 1983)

215. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

216. By punishing and threatening to punish Ms. Ricard for expressing her views regarding gender identity both in and out of the classroom, Defendants have retaliated and are retaliating against Ms. Ricard for exercising her First Amendment rights.

217. When Ms. Ricard communicated her views regarding transgenderism through her use of a student's legal/enrolled of salutation and name in her interactions with the students and in her classroom, she was speaking on a matter of public concern, engaging in speech related to teaching and scholarship, and engaging in expression the First Amendment protects.

218. Ms. Ricard's interest, as a teacher at a public District, in discussing matters of public concern in the context of teaching and scholarship outweighs Defendants' interest in the efficient provision of services.

219. Ms. Ricard's speech on matters of public concern in the context of teaching and scholarship never prevented Defendants from efficiently providing services to the public (or even threatened to do so).

220. Defendants' District Policies, their enforcement of those policies, and their threatened future enforcement of those policies would deter a person of ordinary firmness from exercising her right to free speech in the future.

221. Defendants have enforced the District Policies against Ms. Ricard at least in part because of the views she has expressed on matters of public concern in the context of teaching and scholarship, expression that the First Amendment protects.

222. Defendants subjected Ms. Ricard to discipline and threaten to do so again in the future due to the content and viewpoint of Ms. Ricard's speech.

223. Defendants' District Policies and their enforcement of those policies violate Ms. Ricard's right to free speech as guaranteed by the First Amendment to the United States

Constitution.

## SECOND CAUSE OF ACTION

**Violation of Plaintiff's First Amendment Right to Freedom of Speech**

**Content & Viewpoint Discrimination**

**(42 U.S.C. § 1983)**

224. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

225. By punishing and threatening to punish Ms. Ricard for expressing her views regarding gender identity both in and out of the classroom, Defendants have engaged in content and/or viewpoint discrimination in violation of the First Amendment.

226. Defendants' District Policies require officials to evaluate the content and viewpoint of faculty expression to determine whether it constitutes discrimination or harassment and whether it creates a hostile environment.

227. Defendants considered the content and viewpoint of Ms. Ricard's expression when they decided to enforce their District Policies against her and they threaten to do so again if she continues to express her views.

228. Defendants' District Policies confer unbridled discretion upon District officials to discriminate based on content or viewpoint.

229. Defendants exercised this unbridled discretion when they punished Ms. Ricard for expressing her views regarding gender identity.

230. Defendants' District Policies and their enforcement of those policies are unconstitutionally overbroad because they restrict a significant amount of constitutionally protected speech.

231. The overbreadth of Defendants' District Policies chills the speech of Ms. Ricard, who seeks to engage in protected expression in her interactions with students at school and in the classroom.

232. Ms. Ricard's expression regarding gender identity is protected by the First Amendment.

233. By placing a written warning in her personnel file for allegedly violating their District Policies, Defendants have punished Ms. Ricard for engaging in expression the First Amendment protects.

234. Defendants' District Policies and their enforcement of those policies violate Ms. Ricard's right to free speech as guaranteed by the First Amendment to the United States Constitution.

## THIRD CAUSE OF ACTION

## Violation of Plaintiff's First Amendment Right to Freedom of Speech

## Compelled Speech

## (42 U.S.C. § 1983)

235. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

236. By punishing and threatening to punish Ms. Ricard for refusing to communicate a District-mandated ideological message regarding gender identity both in and out of the classroom, Defendants have attempted and are attempting to compel Ms. Ricard's speech, in violation of her rights under the First Amendment.

237. Defendants' District Policies and their enforcement of those policies compel Ms. Ricard to communicate messages about gender identity that she does not hold, that she does not

wish to communicate, and that conflict with (and violate) her religious beliefs.

238. Defendants' District Policies and their enforcement of those policies violate Ms. Ricard's right to free speech as guaranteed by the First Amendment to the United States Constitution.

## FOURTH CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Free Exercise of Religion

### (42 U.S.C. § 1983)

239. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

240. By punishing and threatening to punish Ms. Ricard for exercising her sincerely held religious beliefs in the way she discusses issues or refrains from discussing issues regarding gender identity both in and out of the classroom, Defendants have violated and are violating her right to free exercise of religion under the First Amendment.

241. Ms. Ricard's views and expression related to gender identity are motivated by her sincerely held religious beliefs, are avenues through which she exercises her religious faith, and constitute a central component of her sincerely held religious beliefs.

242. Expressing the District's mandated message regarding gender identity would require Ms. Ricard to violate her sincerely held religious beliefs.

243. Defendants' District Policies and related practices are neither neutral nor generally applicable but allow Defendants to target religious expression and activities specifically and to express hostility to such expression.

244. Defendants' District Policies and related practices are neither neutral nor generally applicable because they represent a system of individualized assessments.

245. Defendants' District Policies and related practices are underinclusive, prohibiting some expression while leaving unprohibited other expression equally harmful to the District's asserted interests.

246. Defendants' District Policies and related practices burden several of Ms. Ricard's constitutional rights, including her rights under the First Amendment (*e.g.*, freedom of speech, freedom from retaliation, free exercise of religion), the unconstitutional conditions doctrine, and the Fourteenth Amendment (*e.g.*, due process and equal protection).

247. Defendants violated Ms. Ricard's right to free exercise of religion when they applied their District Policies to discipline Ms. Ricard for communicating her views on issues related to gender identity and to compel her to communicate views on those same subjects that violate her religious beliefs, and they continue to do so by threatening to punish her if she continues to communicate her beliefs or if she continues to refuse to communicate views on those same subjects that violate her religious beliefs.

248. Defendants' District Policies and their enforcement of those policies violate Ms. Ricard's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

## FIFTH CAUSE OF ACTION

### Violation of Plaintiff's Right to be Free from Unconstitutional Conditions

### (42 U.S.C. § 1983)

249. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

250. By conditioning Ms. Ricard's status as a teacher in good standing with the District (and ultimately her employment with the District) on her willingness to surrender various

40

constitutional rights, Defendants have imposed and are imposing an unconstitutional condition on her in violation of her First Amendment rights.

251. Defendants' District Policies and their enforcement of those policies impose an unconstitutional condition upon teachers' right to free speech and their receipt of state benefits (*e.g.*, avoiding disciplinary actions up to and including termination, remaining a teacher at a public school).

252. Defendants' District Policies and their enforcement of those policies require teachers to surrender their constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection to avoid disciplinary actions up to and including termination.

253. Defendants enforced their District Policies against Ms. Ricard, making it clear that she can only avoid further disciplinary action if she surrenders her constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection.

254. Defendants' District Policies and their enforcement of those policies violate Ms. Ricard's right to be free from unconstitutional conditions.

## SIXTH CAUSE OF ACTION

### Violation of Plaintiff's Fourteenth Amendment Right to

### Due Process of Law

### (42 U.S.C. § 1983)

255. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

256. By punishing and threatening to punish Ms. Ricard under vague, overbroad, retroactive, and/or constantly changing policies for her expression in and out of the classroom, Defendants have violated and are violating Ms. Ricard's right to due process of law under the

Fourteenth Amendment.

257. Defendants' District Policies and related practices are overbroad because they encompass a substantial amount of constitutionally protected speech.

258. Defendants' District Policies at the time Ms. Ricard was subject to discipline did not include Board-approved or official policies specific to the use of students' preferred names or pronouns.

259. Informal directives provided by then-Principal Molt and Counselor Lubbers regarding Student 1's preferred alternative first name did not state that Ms. Ricard was prohibited from continuing to use Student 1's legal/enrolled last name.

260. Ms. Ricard's expression regarding gender identity is protected by the First Amendment.

261. By placing a Written Reprimand in her personnel file for allegedly violating their District Policies, Defendants have punished Ms. Ricard for engaging in expression the First Amendment protects.

262. Defendants' written warning to Ms. Ricard, issued under the authority of their District Policies, threatens to punish her if she engages in a wide variety of constitutionally protected expression in the future in violation of Ms. Ricard's right to due process of law under the Fourteenth Amendment.

263. Defendants' District Policies and related practices are unconstitutionally vague because they grant District officials unbridled discretion in deciding what constitutes "gender identity" and "gender identity discrimination," because they utilize terms that are inherently subjective and elude any precise or objective definition that would be consistent from one official, teacher, or student to another, because they are incapable of providing meaningful guidance to

Defendants and other District officials, and because they force teachers to guess whether expression that the First Amendment protects is in fact allowed at school.

264. The lack of objective criteria, factors, or standards in Defendants' District Policies and related practices, including the lack of notice of evolving policies and the unequal treatment of Ms. Ricard and other similarly situated staff, renders these policies and practices unconstitutionally vague and in violation of Ms. Ricard's right to due process of law under the Fourteenth Amendment.

## SEVENTH CAUSE OF ACTION

### Violation of Plaintiff's Fourteenth Amendment Right to

### Equal Protection of the Law

### (42 U.S.C. § 1983)

265. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

266. By punishing and threatening to punish Ms. Ricard for expressing her views regarding gender identity both in and out of the classroom when they would not punish teachers who express opposite views on those same subjects, Defendants have violated and are violating Ms. Ricard's right to equal protection of the law under the Fourteenth Amendment.

267. By punishing and threatening to punish Ms. Ricard for using a student's last name as listed in the Skyward school records system instead of the preferred alternate first name of the student when they have since chosen not punish other teachers for using the last name of a student in other circumstances, Defendants have violated and are violating Ms. Ricard's right to equal protection of the law under the Fourteenth Amendment.

268. By allowing the issuance of post hoc initial guidance to teachers (subsequent to

imposing discipline against Ms. Ricard) stating that "[t]he building administration will explain to the student that every effort will be made to remember their preferred name and pronouns; however, patience and understanding will be required," Defendants have created an unconstitutional double standard and have violated and are violating Ms. Ricard's right to equal protection of the law under the Fourteenth Amendment.

269. Ms. Ricard is similarly situated to other teachers at the District.

270. Defendants have chosen to take no disciplinary action against teachers who support and endorse the concepts of fluid gender identity, but they take disciplinary action against a teacher like Ms. Ricard who refuses to endorse those concepts.

271. Defendants take no disciplinary action against teachers who use a student's last name as listed in the Skyward school records system instead of the preferred alternate first name of the student when that teacher has not previously expressed views regarding fluid gender identity, but they have taken disciplinary action against Ms. Ricard whose views on the topic have become known to the District and Defendants.

272. After taking disciplinary action against Ms. Ricard for using a student's legal last name instead of a student's preferred alternative first name, Defendants have knowingly refrained from taking disciplinary action against other staff who have failed or forgotten to use students' preferred names or pronouns.

273. Defendants' District Policies have also been applied to discriminate intentionally against Ms. Ricard's rights to freedom of speech, right to be free from compelled speech, free exercise of religion, right to be free from unconstitutional conditions, and right to due process of law. Thus, discriminatory intent is presumed.

274. Defendants' District Policies and related practices burden Ms. Ricard's fundamental

rights, target a suspect class (*i.e.*, religion), and have no rational basis.

275. Defendants' District Policies and related practices are underinclusive, prohibiting some expression while leaving other expression equally harmful to the District's asserted interests unprohibited.

276. Defendants applied their District Policies and related practices to Ms. Ricard in a discriminatory and unequal manner, granting other teachers the right to express their views on issues related to gender identity while denying that right to Ms. Ricard, in violation of Ms. Ricard's right to equal protection of the law under the Fourteenth Amendment.

## EIGHTH CAUSE OF ACTION

### Breach of Contract

277. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

278. Under Kansas law, the Negotiated Agreement between the JCEA and the District represents an enforceable contract between the District and the JCEA, including its third-party beneficiary members.

279. Ms. Ricard is, and was at all times relevant to this Complaint, a member of JCEA and a third-party beneficiary to the contract covering the 2020-2021 school year.

280. Throughout her career at the District, Ms. Ricard has substantially performed her duties under the Negotiated Agreement and its previous versions and has not materially breached that Agreement.

281. Defendants breached the Negotiated Agreement by subjecting Ms. Ricard to a formal investigation based on vague, overbroad, rapidly evolving, and undefined District policies and informal supervisorial directives, then subjecting her to formal and heightened disciplinary actions,

including the issuance of the April 9 Notice of Suspension and the April 15 Written Reprimand, under the District Policies without opportunity for post-disciplinary "coaching" or informal discussion as contemplated under the Negotiated Agreement.

282. Defendants further breached the Negotiated Agreement by subjecting Ms. Ricard to disciplinary action under the District Policies for expression that is protected by the First Amendment.

283. Defendants Ron Johnson, Kristy Haden, and Jim Schmidt further breached Art. IV, § C.5 and other provisions of the Negotiated Agreement by engaging in *ex parte* communications with legal counsel Mark Edwards, who was appearing at the hearing in his capacity as an advocate for an adverse party, including Defendant Eggleston and other administrators, in order to consult with the Board while Ms. Ricard and her legal counsel were excluded from the meeting.

284. Defendants have no legal excuse for these breaches of the Negotiated Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and provide Plaintiff with the following relief:

A. A declaratory judgment that Defendants' District Policies and related practices violate Ms. Ricard's rights under the First and/or Fourteenth Amendments as applied;

B. A declaratory judgment that Defendants' District Policies and related practices, by including "gender identity" as a protected characteristic, violate Ms. Ricard's rights under the First and/or Fourteenth Amendment facially;

C. A preliminary and permanent injunction prohibiting Defendants, their agents, officials, employees, and any other persons acting on their behalf from enforcing Defendants' District Policies to prohibit Ms. Ricard from expressing her views regarding gender

identity or to punish her for expressing those views, including addressing and referring to students by their legal/enrolled name or another a neutral manner to avoid addressing students by preferred gendered language that violates Ms. Ricard's conscience and religious beliefs;

D.  A preliminary and permanent injunction ordering Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf to purge Ms. Ricard's personnel file of any reference to the punishment they imposed on her for expressing her views regarding gender identity, including the April 9, 2021 Notice of Suspension and the April 15, 2021 Written Reprimand, and all subsequent documentation upholding or referencing those decisions;

E.  Nominal damages from the Defendants for the violation of Plaintiff's First and Fourteenth Amendment rights and contractual rights;

F.  Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

G.  All other further relief to which Plaintiff may be entitled.

Respectfully submitted this 3rd day of March, 2022.

*/s/ Joshua A. Ney*
Joshua A. Ney, KS Bar No. 24077
Ryan A. Kriegshauser, KS Bar No. 23942
Alan M. Vester, KS Bar No. 27892
15050 W. 138th St., Unit 4493
Olathe, KS 66063
Telephone: (913) 303-0639
firm@knlawgroup.com
*Attorneys for Plaintiff*

**DEMAND FOR TRIAL BY JURY AND DESIGNTION OF TRIAL LOCATION**

Plaintiff demands a trial by jury for all issues so triable herein and respectfully requests all hearings and trial proceedings occur in Topeka, Kansas.

/s/ Joshua A. Ney
Joshua A. Ney, Kansas Bar #24077
*Attorney for Plaintiff*

**DECLARATION UNDER PENALTY OF PERJURY**

I, PAMELA RICARD, a citizen of the United States and a resident of the State of Kansas, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing, that the foregoing is true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that the foregoing statements that pertain to me are based on my personal knowledge.

Executed this 3rd day of March 2022, at Manhattan, Kansas.

PAMELA RICARD

49