# EXHIBIT K



Joshua A. Ney
josh@knlawgroup.com
Direct Dial: (785) 414-9065

Page 1 of 6

[SEALED AND CONFIDENTIAL]

August 4, 2021

**VIA EMAIL & HAND-DELIVERED**
Geary County USD 475 School Board
c/o Tina Klauser, Clerk of the School Board
TinaKlauser@usd475.org

> RE: *Pamela Ricard; materials for disciplinary grievance appeal hearing before USD 745 School Board*

Dear Sirs and Madams:

This letter outlines the statements and arguments of my client Pamela Ricard in support of her disciplinary grievance appeal that derives from the adverse actions taken by school administration against my client during the Spring 2020 semester. Included with this cover letter are: 1) a proposed neutrally applicable gendered language policy procedure and accommodation language (attached as Exhibit A); 2) a chronological compilation of documents for the hearing record (attached as Exhibit B); and 3) resources related modern neo-pronoun selection and usage (attached as Exhibit C).

*Resolution Requests*

Included in Exhibit B (p. 68-70) is my July 8, 2021 letter to Dr. Eggleston that outlines our constitutional, statutory, and contractual claims regarding this matter. This letter also provides notice of Ms. Ricard's request for a religious accommodation regarding any ongoing gendered language district policies or administrative directives. To rearticulate, Ms. Ricard's requests for resolution of this appeal as well as her ongoing request for religious accommodation are as follows:

- **Provide a religious accommodation to Ms. Ricard as proposed.** Ms. Ricard requests a religious accommodation regarding any school policy that requires a teacher or school employee to actively state or otherwise use a student's or any other person's preferred pronouns or other gendered language when different from the student's or person's biological sex. Ms. Ricard believes that any such policy also constitutes compelled speech by a governmental entity in violation of her right to free speech under the federal and state constitutions, as well as other concerns and potential claims related to due process and other rights.

  Ms. Ricard is a Christian and holds sincere religious beliefs consistent with the traditional Christian and biblical understanding of the human person and

Kriegshauser Ney Law Group | 900 S. Kansas Ave., Ste. 402 | Topeka, KS 66612
www.knlawgroup.com

biological sex. Ms. Ricard believes that God created human beings as either male or female, that this sex is fixed in each person from the moment of conception, and that it cannot be changed, regardless of an individual person's feelings, desires, or preferences. Any policy that requires Ms. Ricard to refer to a student by a gendered, non-binary, or plural pronoun (e.g. he/him, she/her, they/them, zhe/zher, etc.) or salutation (Mr., Miss, Ms.) or other gendered language that is different from the student's biological sex actively violates Ms. Ricard's religious beliefs.

Ms. Ricard's basis for a religious accommodation is grounded in her constitutional and statutory rights under the First Amendment of the United States Constitution, Title VII of the federal Civil Rights Act of 1964, Section 7 of the Kansas Bill of Rights, the Kansas Acts Against Discrimination (K.S.A. 44-1001 et seq.), the Kansas Preservation of Religious Freedom Act (K.S.A. 60-5302 et seq.), and other applicable federal and state laws and regulations.

<u>Ms. Ricard's proposed policy accommodation is attached hereto as EXHIBIT A.</u>

- **Rescind school administration discipline.** Remove from Ms. Ricard's permanent employee file all documents and references to the three-day suspension and other adverse employee disciplinary actions imposed by the school against Ms. Ricard regarding the April 2021 student gender preference issue.

***Material Considerations for Board***

In addition to the witness testimony Ms. Ricard and others will provide at the hearing, the following material considerations are provided in support of Ms. Ricard's discipline appeal request:

1. <u>Use of last name instead of first name</u>

The school administration's discipline was issued based on Ms. Ricard's decision to address ▬▬▬▬▬▬▬▬▬▬ by her *last name*. Mr. Lubbers' email stated: "▬▬▬▬ *asked me to tell you that she would like to be called* ▬▬▬.' Thank you." (emphasis added). Mr. Lubber did not tell Ms. Ricard that ▬▬ no longer had a last name, and he specifically referred to ▬▬▬▬▬▬ as "she." The school district discipline determination ultimately affirmed by Dr. Eggleston was that "Mrs. Ricard had been notified by fellow staff members of the preferred names of students in her Math Strategies class. Mrs. Ricard did not make any attempts to utilize the preferred names when notified by staff." *See* Exhibit B p. 65.  This in turn constituted a violation of the Diversity and Inclusion (GAACB), Bullying by Staff (GAAE), and Staff-Student Relations (GAF) policies.

In other words, using a student's last name instead of her first name constituted:

- **GAACB** – "conduct that reflects dignity, respect and inclusion at all times during the instructional day and at all other district-sponsored programs and events;"

Kriegshauser Ney Law Group | 900 S. Kansas Ave., Ste. 402 | Topeka, KS 66612
www.knlawgroup.com

- **GAAE** – "[an] intentional . . . verbal act . . . that is sufficiently severe that creates an intimidating, threatening or abusive educational environment for a student or staff member that a reasonable person, under the circumstances, knows or should know will have the effect of . . . harming a student or staff member, whether physically or mentally;"

- **GAF** – failure to "maintain professional relationships with students which are conducive to an effective educational environment," and/or "submitt[ing] students to bullying, harassment, or discrimination prohibited by board policy" and/or having an "interaction of an inappropriate and/or sexual nature with any student at any time regardless of the - student's age or consent."

*See* Exhibit B, p. 32. The decision to discipline Mrs. Ricard for a "severe" violation of these policies solely based on her use of a student's last name is unreasonable. Nothing in Lubber's email indicated that "▓▓▓" had replaced ▓▓▓▓▓▓▓▓▓'s first and last name, nor did it suggest anything regarding ▓▓▓▓▓▓'s gender preferences. Based upon Lubber's email, Mrs. Ricard's choice to address ▓▓▓▓▓▓▓ as "▓▓▓▓▓▓" was well within the standard practice of other teachers.

2. <u>Due Process: School administrators created an ad hoc and retroactive gender policy *after* the imposition of discipline that provided more due process and lenient treatment of violations than otherwise provided to Mrs. Ricard when no policy existed.</u>

Mrs. Ricard was provided less due process and consideration in this matter than school officials ultimately created in the April 21, 2021. The alleged violation occurred on April 7, 2021 when Mrs. Ricard referred to ▓▓▓▓▓▓▓▓▓▓▓▓▓ as "▓▓▓▓▓▓" and "Miss ▓▓▓▓▓▓." On March 7, 2021, Principal Shannon Molt had emailed an instruction to staff:

> "When we have a student that requests to go by a preferred name that is different than their given name, our district honors the request. Once you are aware of a preferred name, use that name for the student."

*See* Exhibit B, p. 7. No school policies were referenced in this email. Ultimately, school administration determined that the email Mr. Lubbers sent to Ms. Ricard on April 7, 2021 was sufficient notice of a name change, such that referring to the student as "▓▓▓▓▓▓" and "Miss ▓▓▓▓▓▓" constituted discrimination and bullying. *See id.*, p. 8.

However, at the time, no official district policy existed regarding use of student's "preferred names or pronouns" when different from student's enrolled name or sex. On April 21, 2021, Principal Molt emailed the middle school staff a document *backdated* to April 7, 2021 entitled "Diversity Training on Gender Identity and Gender Expression" as well as a document *backdated* to April 14, 2021 entitled "Use of Preferred Names and Pronouns." *See* Exhibit B, p. 36-40. This second document gave specific instruction regarding the *process* by which student preferred names would be recognized:

> When a student shares with a staff member that the student wants to go by a preferred name and pronouns, the staff member will:
>
>> - Share the student's request with the building administrator(s) and grade level or school counselor.
>
> The building administration or counselor will speak with the student to confirm the request and provide awareness of the request. The building administration or counselor will advise the student that their preferred name and pronouns will be utilized by staff in the building. *The building administration will explain to the student that every effort will be made to remember their preferred name and pronouns; however, patience and understanding will be required. The building administration will contact the parents/guardians of the student to inform them that the school will honor the request of the student.*
>
> *The building administration or counselor will then notify the student's teachers of the preferred name and pronouns.* The building administration will notify any additional staff that may have contact with the student (instructional coaches, nurse, front office staff, support staff.)
>
> . . .
>
> If staff are not utilizing the preferred names and pronouns requested by any student or staff member, the building administration should be made aware. *Building leadership will consult with the individuals in question and advise them to follow district policies and procedures.*

*See* Exhibit B, p. 41 (emphasis added). This *new* policy, adopted by the school administration after Ms. Ricard was disciplined, affords more leniency and due process that was provided to Ms. Ricard absent a policy. Building leadership did *not* "consult with [Ms. Ricard] and advise [her] to follow district policies and procedures" after her solitary "violation." Rather, the school administration took a "one-strike-and-you're-out" approach with Mrs. Ricard, even absent a policy.

Moreover, the policy *expressly acknowledges* the need for "patience and understanding" from a student when isolated mistakes happen. This "patience and understanding" was not afforded to Mrs. Ricard when the administration chose to level-jump the discipline level to a written reprimand and suspension as articulated in Dr. Eggleston's May 19, 2021 level III grievance letter:

> Due to the nature of the board policies in violation, the incident was not of a minor nature. The district has an obligation as educators to ensure that our students are provided with a safe and secure environment. When someone engages in conduct that is deemed to be in a discriminatory nature, action must be taken and cannot be limited to a counseling or an oral reprimand. The counseling in this incident had

already occurred when the building leadership provided the email notification to staff on March 31, 2021 and through the Trooper Newsletter on April 4, 2021.

*See* Exhibit B, p. 64-65. In other words, no "patience and understanding" will be given to Mrs. Ricard, but it is expected of students when "mistakes" under the gendered language policy occur in the future. Moreover, while administration will "consult" with future violators of this policy and "advise them to follow district policies and procedures" *after* a violation occurs, Mrs. Ricard was provided no such post-violation "consultation," only investigation and discipline.

3. <u>Preferred name and pronoun policy is unworkable without requiring student and parents to update enrollment information</u>

The issues created by a "preferred name and pronoun" policy that does not require a formal update of enrollment information include, at a minimum:

-loss of teacher classroom control;

-potential for parental consent issues regarding minor child's preferred names and genders;

-increased potential possibility of student and teacher harassment of colleagues seeking to "set up" a disliked teacher for a violation;

-the potential for bad faith *ad hoc* changes in student names (e.g. daily name changes, obscene names, new names without parental consent);

-the potential for student-to-student bullying by deceitfully "informing" a teacher of another student's "new" preferred name or gender.

This is not an academic exercise. Mrs. Ricard is aware of situations in her school during the 2020-2021 school year wherein a student changed his name several times without any formal enrollment update. More to the point, the student at issue in this matter, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, was issued a Level 1 discipline in September 2020 for logging into a classroom zoom under the name "Cumsock." *See* Exhibit B, p. 4.

In addition, the limitless number of preferred gendered pronouns and salutations being incorporated into everyday parlance creates a potentially uncontrolled school environment. Examples of the variety of "preferred pronouns" available to students are attached as Exhibit 4 for reference. If the district is going to acknowledge a student's gendered language preferences without limitation, the district must provide a formal re-enrollment process that provides teachers with notice and prevents

*Conclusion*

Ultimately, at issue in this matter are First Amendment and other legal considerations as well as practical district administration considerations. Allowing a student to change names on

an *ad hoc* basis, as well as recognizing staff or student hearsay as to the student's current preferred name as "notice" to a teacher, creates a powder keg of confusion and "gotcha" gamesmanship traps for teachers.  This is especially true given the nearly limitless "neo-pronouns" being incorporated by many sectors of society where *any* word can be converted into a pronoun. At the end of the day, both teachers and students need a clear policy that articulates a process for recognizing students' preferred names and pronouns with parental consent, accommodates religious objections to compelled use of gendered language, and prevents classroom management and other issues through a formal enrollment record update process. Mrs. Ricard has proposed such a clear policy as a means of resolving both her religious accommodation request and her disciplinary appeal.

    Thank you for consideration.

                                   Very Truly Yours,

                                   Joshua A. Ney, Partner
                                   Kriegshauser Ney LLC