# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PAMELA RICARD,

        Plaintiff,

vs.

USD 475 GEARY COUNTY SCHOOLS SCHOOL BOARD MEMBERS—Ron Johnson, Kristy Haden, Anwar Khoury, Jim Schmidt—in their official and individual capacities; Beth Hudson, Mark Hatcher, Jason Butler—in their official capacities; REGINALD EGGLESTON, Superintendent, USD 475 Geary County Schools, in his official and individual capacities; and KATHLEEN BRENNAN, Principal, Fort Riley Middle School, in her official capacity,

        Defendants.

Case No. 5:22-cv-04015-HLT-GEB

## Reply re Motion to Dismiss [Doc. 27]

Defendants submit this reply in support of their motion to dismiss, *Doc*. 27.

## Argument and Authorities

**I.    Plaintiff Ricard's speech was not protected by the First Amendment.**

Plaintiff retains limited constitutional rights inside the schoolhouse gates. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969). But those rights are curtailed when plaintiff is performing her official duties, such as teaching a math class.

Plaintiff's formulation of the question in this case is inaccurate. The question is not "*what* the government *can* make an official duty in the first place." *Doc*. 29 at 1. The federal government requires non-discrimination and equal treatment on the basis of sex/gender. *See e.g.*, U.S. Const. amend. XIV, 20 U.S.C.A. § 1681 *et. seq*., *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), and Executive Order 14021. USD 475 can, and does, make equal treatment and

non-discrimination a requirement for its employees. The Complaint and the incorporated materials make it clear that plaintiff intentionally treated transgender students differently from cisgender students during a class because they were transgender.

The first question under the *Garcetti/Pickering* test is whether the speech at issue was speech made pursuant to Ricard's official duties. When the answer to that question is "yes" (which it is), the speech is not protected by the First Amendment and the analysis concludes. It is only when the speech is *not* made pursuant to Ricard's official duties that the remaining steps of the *Garcetti/Pickering* test are applied.

### A. Plaintiff Ricard's speech was:
(1) Government speech over which the District may exercise editorial control or, alternatively,
(2) School-sponsored speech over which the school may exercise editorial control reasonably related to legitimate pedagogical concerns.

*Garcetti, Brammer-Hoelter* and *Hazelwood* are controlling based on the facts alleged. *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192 (10th Cir. 2007); and *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988). Plaintiff Ricard was a middle-school teacher tasked with teaching math to students in her classroom. The speech at issue occurred during a middle-school math class while addressing middle-school math students.

Speech is made pursuant to official duties if it is generally consistent with "the type of activities [the employee] was paid to do." *Brammer-Hoelter*, 492 F.3d at 1203. Plaintiff was under contract to teach math. Defendants can control how that engagement occurs between plaintiff and students. Plaintiff argues that only speech for *uncontested* employment responsibilities can be limited. Doc. 29 at 15. This is unavailing Plaintiff's uncontested employment responsibilities include teaching students while also refraining from discriminating on the basis of sex as dictated by federal law, state law, and District policy.

Plaintiff's assertion her rights were violated because she was compelled to speak the government's message is inaccurate. Plaintiff was not compelled to speak any message. Plaintiff's violation rests not in her use of last names or a refusal to use preferred names. Rather, it rests in intentional discrimination on the basis of sex/gender.

Plaintiff's reliance on *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018), Doc. 29 at 16, is inapposite. Any so-called "compulsion" to use a student's preferred name applies equally to cisgender students (Abigail prefers Abby, Frank Jones III prefers Trey) and transgender students (Bob prefers Betty). Such "compulsion" would be justified under *Janus*. 138 S. Ct. 2448, 2473 (2018). *Janus* holds that speech can be compelled when the speech is part of the employee's official duties. *Id*. ("Of course, if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message.") The lawful message at issue here is equal treatment of students in a math class. Ricard's official duties as a math teacher included equal treatment of students in her classroom.

> When a teacher teaches, "the school system does not 'regulate' [that] speech as much as it hires that speech. Expression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary." *Mayer v. Monroe County Cmty. Sch. Corp.*, 474 F.3d 477, 479 (7th Cir.2007). And if it is the school board that hires that speech, it can surely "regulate the content of what is or is not expressed," *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995), what is expressed in other words on its behalf. Only the school board has ultimate responsibility for what goes on in the classroom, legitimately giving it a say over what teachers may (or may not) teach in the classroom.

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 340 (6th Cir. 2010). Further, a public school is permitted to compel school-sponsored speech, or to punish for the misuse of school-sponsored speech, provided its decision is reasonably related to legitimate pedagogical concerns. *Corder*, 566 F.3d at 1231; *Axson–Flynn*, 356 F.3d at 1290; *Fleming*, 298 F.3d at 926. Engaging students to teach them a core requirement of the

curriculum–math– *is* reasonably related to a legitimate pedagogical concern.

Plaintiff misapplies the law when arguing *Garcetti* does not apply when the compelled speech *implicates* the employee's interest outside of work. Doc. 29 at 16 (emphasis added). The mere fact the speech may be of intense, personal and public concern does not render speech pursuant to official duties into speech as a citizen. Implication of an employee's personal interests as a does not make *Garcetti* inapplicable. When government employees speak "pursuant to their official duties," *Garcetti* teaches that they are "not speaking as citizens for First Amendment purposes." 547 U.S. at 421. Ricard, a teacher, was "paid to execute the [District's] curriculum and utilize an effective pedagogy" and the manner in which Ricard addresses students while teaching is "made pursuant to Plaintiff]'s] official duties and could be freely regulated by the" District. *Brammer-Hoelter*, 492 F.3d at 1204. "Any dispute over the board's motivations, *Pickering* balancing or the 'public concerns' of her speech under *Connick* is beside the point if" Plaintiff's speech was "in connection with her official duties as a teacher." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d at 340.

Plaintiff knew the student was transgender Doc. 1, ¶ 103. Plaintiff does not routinely use a student's last name as a form of address. Doc. 1, ¶ 112. Plaintiff used only a last name to address the transgender student in her classroom. Doc. 1, ¶¶ 114, 117. Plaintiff treated transgender students differently because of their biological sex and preferred gender (a refusal to acknowledge them as transgender).

Even when viewing the facts most favorable to the plaintiff, the facts show plaintiff intentionally discriminated against a transgender student in class, on school property, during school hours, as part of the teaching plaintiff was paid to do.

Plaintiff's speech was pursuant to plaintiff's official duties and was not protected by the First Amendment.

### B. Enforcing anti-discrimination policies is not an infringement upon religion.

Plaintiff makes a bare assertion that the District treated her differently from others engaging in the *same* conduct, and that this distinction was because of her religion.

The complaint provides no basis to infer the District had knowledge of plaintiff's religious concerns until she filed a request for a religious accommodation four months after her suspension. Doc. 1-C (dated April 9, 2021); Doc. 1-K (dated August 4, 2021). Advance notice is required. *See e.g.*, *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (employers are not required "to give lesser punishment to employees who claim, after they violate company rules (or at the same time), that their religion caused them to transgress the rules.").

Plaintiff bears the burden to show religious beliefs were a motivating factor in the adverse employment action. *See Brammer-Hoelter*, 492 F.3d at 1207. But even taking plaintiff's bare assertion as true that the District somehow knew of plaintiff's religious convictions without her informing them, the discipline remains justified under federal law prohibiting discrimination.

A person's religious beliefs does not exempt them from following the law. *See Tagore v. United States*, 735 F.3d 324, 329–30 (5th Cir. 2013) (An employer need not accommodate an employee's religious practice by violating other laws); *Seaworth v. Pearson,* 203 F.3d 1056, 1057 (8th Cir. 2000) (defendant need not accommodate plaintiff's religious beliefs when doing so would require defendant to violate federal law, which creates an undue hardship); *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 830–31 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."); *United States v. Bd. of Educ.,* 911 F.2d 882, 890–91 (3d Cir. 1990) (holding that allowing a Muslim teacher to wear religious garb while teaching, thereby violating a state criminal statute, would impose undue hardship on

defendant school district).

The District suspended plaintiff for policies that had been in effect long before her infractions. Her notice of suspension listed a violation of ten Board Policies that had long been in place. Doc. 1-18. Further, the policies plaintiff violated were both neutral and generally applicable. There are no exemptions authorizing anyone to discriminate against transgender students. The District's enforcement of nondiscrimination and anti-bulling policies did not violate plaintiff's religious beliefs.

### C. Ricard's mode of addressing middle school students is not a matter of public concern.

Plaintiff's citations to *Janus* are not helpful. Plaintiff fails to consider role of the speaker at the time the speech occurred. In *Janus*, the speech at issue was a labor union speaking on behalf of all employees and forcing non-union members to pay a fee. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2461 (2018) ("the nonmembers were told that they had to pay for "[l]obbying," "[s]ocial and recreational activities," "advertising," "[m]embership meetings and conventions," and "litigation," as well as other unspecified "[s]ervices" that "may ultimately inure to the benefit of the members of the local bargaining unit.") The speech at issue in *Janus* was wholly unrelated to the employee's job duties.

## II. Ricard is not entitled to a religious "accommodation" that allows her to discriminate against transgender students.

Plaintiff's does not address this claim in the response. The claim is abandoned.

## III. Ricard's free exercise claim is moot.

The District rescinded the Communications with Parents Policy and plaintiff is no longer employed by the District. Additionally, per the JCEA Negotiated Agreement, "Any reprimand or written behavior plan that is resolved may not be referenced after 13 calendar months and shall be purged at the end of that school year." Doc. 1-8, Article X, Teacher Discipline, ¶ 6. Thus,

plaintiff's claim for injunctive and declaratory relief are moot and must be dismissed.

Plaintiff advances three reasons for her free exercise claim to remain live. All should be disregarded. First, plaintiff claims her original suspension and reprimand violate her free exercise rights. As discussed above, plaintiff's speech was not protected, and her religious exercise was not infringed through an enforcement of anti-discrimination policies. *See, supra*. Additionally, plaintiff's allegation that teachers who do not use preferred names or pronouns face punishment (Doc. 29 at 23) is incorrect. Teachers who do not use preferred names for anyone face no threat of punishment, rather, the potential for discipline arises from intentional discrimination.

Second, plaintiff alleges an ongoing reputational injury because of the discipline record being maintained in her file. But the record is not in her file, as per the requirements of the JCEA Contract, requiring removal in May of 2022. Thus, plaintiff's argument works against her, *See Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) (as long as a "record contains evidence of disciplinary sanctions" and the plaintiff seeks "an order requiring school officials to expunge from school records all mention of the disciplinary action, the action is not moot." (cleaned up)) Doc. 29 at 28.

Finally, plaintiff makes a bare assertion that her rights were violated "through the enforcement of" the Communications with Parents Policy during the time it was still valid. Doc. 29 at 29. First, the policy was never enforced against plaintiff, and she faced no repercussions while this policy was active. Second, the Court's finding on this issue was that plaintiff demonstrated the "*continued* application of the Communication with Parents Policy to her burdens her religious exercise." *Ricard v. USD 475 Geary Cty., Kan. Sch. Bd.*, No. 5:22-cv-04015, 2022 WL 1471372, at *10 (D. Kan. May 9, 2022) (emphasis added). But the policy has since been rescinded and plaintiff no longer works for the District. There is no burden to plaintiff's religious freedoms on the implementation of a defunct policy where the plaintiff is no

longer employed.

When circumstances change and a defendant is no longer "situated to have their future conduct toward the plaintiff altered by the court's declaration of rights," the claims for declaratory and injunctive relief are moot. *Jordan v. Sosa*, 654 F.3d 1012, 1025–26 (10th Cir. 2011). Plaintiff was never harmed by this policy, and there can be no further harm to plaintiff from this policy, so her claim for injunctive and declaratory relief are moot and must be dismissed.

**IV.  Ricard was not deprived of due process. Ricard was not deprived of any protected interest and Ricard was afforded extensive due process protections that far exceeded the minimum necessary to satisfy constitutional requirements.**

Plaintiff's Response demonstrates a deliberate misunderstanding of the policies violated. Plaintiff continues to point out that there was no policy prohibiting the use of last names and no policy prohibiting the use of last names in place of preferred pronouns. Doc. 29 at 26. This turns a blind eye to the discrimination policies and the fact treated transgender students differently on the basis of sex. The notice of suspension plaintiff received listed the applicable policies plaintiff violated. Doc. 1-C. Plaintiff completed several years of required anti-discrimination training during her employment with the District and presumably understood that she must treat her students equally. Doc 11-13.

The Response is an example of the straw man fallacy that does not warrant further attention.

**V.  The Complaint fails to state an equal protection claim.**

The Response does not address the failure of the Complaint to allege Ricard was treated differently on the basis of any suspect class. The does not allege any other District staff intentionally discriminated against transgender students without consequence.

## VI. The District did not breach any contract with Ricard.

The Response continues to ignore the board policies violated by her admitted conduct. Plaintiff knew the student was transgender Doc. 1, ¶ 103. Plaintiff does not routinely use a student's last name as a form of address. Doc. 1, ¶ 112. Plaintiff used only a last name to address the transgender student in her classroom. Doc. 1, ¶¶ 114, 117. Plaintiff treated transgender students differently because of their biological sex and preferred gender (a refusal to acknowledge them as transgender). The notice of suspension clearly outlined the Board Policies prompting the suspension. See Doc. 1-3. Plaintiff does dispute these policies were in effect at the time of her violation.

The response also erroneously believes that plaintiff has the authority to decide what violations of conduct are "minor" infractions and which violations allow for an escalated disciplinary procedure. Plaintiff argues her conduct did not meet the threshold of "impairing the effective operation of the school" to warrant the elevated discipline. Doc. 29 at 28. But that wasn't her call to make. Superintendent Eggleston and the School Board reviewed the incident and concluded that plaintiff's actions (which she does not dispute) were not of a "minor nature," and warranted the elevated discipline of suspension and reprimand. Plaintiff's personal belief to the contrary does not demonstrate a breach of contract.

The District did not violate any conditions set forth in the contract and this claim should be dismissed.

## VII. The individual defendants are entitled to qualified immunity.

"[Q]ualified immunity shields government officials from liability for money damages unless the plaintiff shows that the official violated a federal statutory or constitutional right, and that the right the official violated was "clearly established" at the time of the challenged conduct." *Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1194 (D. Kan. 2018) (quoting *Ashcroft v.*

*al-Kidd*, 563 U.S. 731, 735 (2011)). Defendants' qualified immunity arguments are not directed to the claims for injunctive relief (which are moot).

## Conclusion

For the foregoing reasons and those set forth in defendants opening memorandum, the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cmoe@fpsslaw.com
**s/David R. Cooper**
David R. Cooper                                    #16690
Crystal Moe                                        #29168
**Attorneys for Defendants**

## Certificate of Service

I hereby certify that I electronically filed the foregoing on the 5th day of July, 2022, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Joshua A. Ney, KS #24077
Ryan A. Kriegshauser, KS #23942
Alan M. Vester, KS #27892
KRIEGSHAUSER NEY LAW GROUP
15050 W. 138th Street, Unit 4493
Olathe, Kansas 66063
T: (913) 303-0639 | firm@knlawgroup.com

Tyson C. Langhofer, KS #19241
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
T: (480) 444-0020 | tlanghofer@adflegal.org

**s/David R. Cooper**
